UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Victoria Wellington, | : | Case No. 1:07CV3559 |
| Plaintiff | : | Judge Kathleen O'Malley |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his/her favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff's right to benefits under both programs is dependent upon a showing that she is disabled, as that term is defined in the Social Security Act. Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months." 42 U.S.C. §§423(d)(1), 1383c(a). The programs differ with regard to other qualifying criteria. The disability benefits statute requires "fully insured" status, which focuses on the period of time the claimant has worked while covered by Social Security. The SSI program focuses on income and resources as basic eligibility factors.

Plaintiff applied for benefits on February 27, 2005, alleging an onset date of November 29, 2001.  In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "pinched nerve upper neck and back.  Left knee problem can't read or write, depression-bipolar" and "I started a new job on 2/14/03.  I don't know how long this job will last.  I wear a back brace, its [sic] work sometimes.  My depression affects [sic] my work."

Upon denial of plaintiff's claims on the state agency level hearing <u>de</u> <u>novo</u> before an Administrative Law Judge (ALJ) was requested.  Evidentiary hearing was conducted by teleconference on October 3, 2005, with the plaintiff, her counsel and a vocational expert, Mr. Thomas Nimberger,[1] in Cleveland and the ALJ in Stockton, California..

At that hearing the plaintiff testified that she graduated from high school, but was in special education classes from the third grade forward and could only read and write at the third grade level.  She stated that her longest period of employment was at a General Motors plant from 1979 to 1992, from which she was fired for absenteeism, after which she held several short term jobs.

When asked by the ALJ "What's the worst medical condition that keeps you from working now?" the plaintiff responded:

> A. My back, my neck, my reading, and I don't like to be around a lot of people.
>
> Q. What's wrong with your back?
>
> A. I have a pinched nerve lower back and my upper back and upper neck and the type of work, I can't move quickly.  If I move too quick, my back could go out.  My knee will go out, because I have a torn ligament in my left knee.

With regard to her mental/emotional state the plaintiff testified as follows when questioned by the ALJ:

---

[1] Mr. Nimberger's name incorrectly appears in the hearing transcript as Newberger.

2

Q. Are you receiving medical treatment for any mental or emotional problems?

A What does he mean by treatment?

ATTY: Like a psychiatrist, psychologist, therapist.

CLMT: Oh, yes.

BY ADMINISTRATIVE LAW JUDGE:

Q. Who are you seeing for treatment?

A. Becky Snyder.[2]

Q. What is Ms. Snyder treating you for?

A. Depression.

Q. What is she doing for your depression?

A. We talk, explain all my problems, what I'm going through, break down, have panic attacks—

Q. How often—

A. —take my—

Q. –do you have a panic attack?

A. Probably every other day I guess. I don't—I really don't know.

Q. Is there anything—

A. [INAUDIBLE]

Q. —anything that brings on a panic attack?

A. That I don't know why I have those.

Q. Okay. Is there anything that happens to you that causes it?

---

[2]At the hearing Ms. Snyder was identified by plaintiff's counsel as the plaintiff's treating psychiatrist (R. 29). It is clear that she is not. In the plaintiff's medical records Ms. Snyder is identified as a Psychiatric Clinical Nurse Specialist (R. 389).

3

    A.  No. I just break down and start crying. I wish I know the answer to that.

    Q.  Is that what you mean by a panic attack, you cry?

    A.  No. I can't breathe. I have to breathe into a bag or can't do it, I guess.

When questioned by her counsel the plaintiff testified:

    Q.  Ma'am, at the beginning when the judge asked you about your worst conditions, one of the things that you mentioned was anger, I believe, with other people.

    A.  Yes.

    Q.  Could you explain that to us a little bit?

    A.  I'm just a person that likes to be by myself when I work and I just get made when other people work with me.

    Q.  Why is that?

    A.  I don't know.

    Q.  Is there anything in particular that they say or do that gets you mad?

    A.  No. I just—I flip. Other than my boss may tell me to do this then I'll do it. But anybody else, I just flip on them, get mad.

    Q.  Does that happen in any other circumstance beside work?

    A.  No.

    Q.  Do you have any friends, Ms. Wellington?

    A.  No. I'm a loner, drifter.

    Q.  Now, you mentioned before being depressed.

    A.  Yes.

    Q.  What kind of symptoms do you have with your depression?

    A.  I cry. I stay in bed for three or four days where I don't want to do anything.

    Q.  How is your sleep at night? Do you sleep well at night?

    A.  No.

    Q.  Do you have problems falling asleep or staying asleep?

    A.  Falling.

    Q.  And is there anything in particular that keeps you from falling asleep, ma'am?

    A.  I just can't sleep.

On May 25, 2006 the ALJ entered his decision denying the plaintiff's claims, which stands as the defendant's final determination consequent to denial of review by the Appeals Council on September 14, 2007. The headings on the ALJ's Findings of Fact and Conclusions of Law were:

1. The claimant met the insured status requirements of the Social Security Act only through December 31, 2002.[3]

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mild degenerative disc disease, osteoarthritis of the shoulder, and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds, occasionally, to lift 10 pounds frequently, to stand and/or walk for six hours in combination, and to sit without limitations when not required to stand or walk. She should avoid overhead, reaching with the bilateral upper extremities. The claimant retains the ability to

---

[3] Because the plaintiff's fully insured status only extended to that date she would only be entitled to DIB if she was disabled prior thereto. She would, however, remain eligible for SSI if she was disabled at any time after her application date.

  understand, remember and carry our simple job instructions but should have limited contact with co-workers and the general public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on January 21, 1955 and was forty-six years old on the alleged disability onset date, which is defined as a "younger individual age 45-49" and she attained age 51 on January 21, 2006 and is now "closely approaching advanced age." (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from November 29, 2001 through the date of this decision (20 CFR 404.1520(f) and 416.920(F).

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record

>   taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

>   The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

On this appeal three issues are presented, those being:

1. Whether the ALJ erred in the analysis of Ms. Wellington's disability under Listing Section 12.05(C).

2. Whether substantial evidence supports the ALJ's determination regarding plaintiff's mental functional capacity.

3. Whether an incomplete evidentiary record requires remand.

The last of these is a non-issue, as it is based on an unsubstantiated premise. This argument is based upon the application of Acquiescence Rulings 98.3(C) and 98.4(6). As defendant points out,

those Rulings only apply when there has been a prior determination at the ALJ or Appeals Council level, and the plaintiff has provided no evidence of such determinations.[4] This Court also notes that this issue was not raised before either the ALJ or the Appeals Council, which could have waiver implications.

Turning to plaintiff's first position, it is argued that she meets Listing 12.05(C) of the Listings of Impairments by virtue of the combination of a limited IQ and her physical impairments, Listing 12.05(C) is a subpart of Listing 12.05 pertaining to disability by reason of "Mental Retardation and Autism." Listing 12.05(C) provides that disability can be found for an individual with "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitations or function."

While it is true that the plaintiff has been found to have an IQ between 65 and 70 and the ALJ found that she has physically limiting impairments, the shortcoming in this argument is that it ignores Sixth Circuit precedents holding that in order to meet Listing 12.05(C) a claimant must also satisfy the requisite of Listing 12.05 calling for proof of "deficits in adaptive behavior initially manifested during the developmental period (before age 22)." See, West v. Commissioner of Social Security, 2007 WL 1991059 (6th Cir. July 5, 2007), slip opinion p. 6; Cooper v. Commissioner of Social Security, 2007 WL 543059 (6th Cir., Feb. 15, 2007), slip opinion p. 1. In addition, it is also inconsistent with the holdings in West, Cooper and McDonald v. Secretary of Health and Human Services, 1986 WL 10598 (6th Cir., Feb. 25, 1986), slip opinion p. 5, that maintaining employment for a period of years must be taken into consideration in assessing a claim of disability premised upon mental retardation. In this case the ALJ specifically found that "The evidence in this case does not demonstrate deficits in

---

[4]In defendant's brief it is represented that "Agency records indicate that determinations on any previous applications were at the initial or reconsideration level, and were not appealed to an ALJ or the Appeals Council."

adaptive functioning. On the contrary, the evidence shows lack of adaptive deficits as the claimant was able to complete high school, albeit in special education. Additionally, she was able to engage in semi-skilled employment and maintained that employment for a significant period of time, losing her job due to cocaine abuse and imprisonment for trafficking rather than any lack of ability or intellectual deficit."

As regard the contention that "The ALJ's determination regarding plaintiff's mental functional capacity is not supported by substantial evidence," this Court finds that the ALJ's comprehensive determination on this question was well within his zone of choice as trier of the facts.

It is, therefore, recommended that final judgment be entered in defendant's favor affirming the denial of plaintiff's claims.


                                            s/DAVID S. PERELMAN
                                            United States Magistrate Judge


DATE:   October 20, 2008




**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).